# United States District Court

| MIDDLE | DISTRICT OF | ALABAMA |

FILED
MAR 17 2008
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA

v.

BRYON CHARLES COLLINS

CRIMINAL COMPLAINT

CASE NUMBER: 2:08mj18-WC

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March 15, 2008__ in __Montgomery__ county, in the __Middle__ District of __Alabama__ defendant did, (Track Statutory Language of Offense) knowingly possess with the intent to distribute heroin, a Schedule I Controlled Substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__

I further state that I am a __Task Force Agent with HIDTA__ and that this complaint is based on the following facts:
Official Title

See attached Affidavit

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

March 17, 2008                        at      Montgomery, Alabama
Date                                              City and State

WALLACE CAPEL, JR., U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer                Signature of Judicial Officer

# AFFIDAVIT

I, Robert Thornton, being first duly sworn, do hereby state and affirm that:

1. I am an Alabama State Trooper, assigned as an agent for the Alabama Bureau of Investigation's Narcotics Operations Service, and detailed to the Major Investigation Team of the High Intensity Drug Trafficking Area Task Force (HIDTA), which are both located at the Investigative Operations Center in Montgomery, Alabama. I am cross-designated and federally deputized as an agent of the United States Drug Enforcement Administration (DEA), which empowers me with authority under Title 21, United States Code, to conduct investigations and make arrests of those suspected of involvement in illegal activity pertaining to violations of federal law. I have twenty-seven years of law enforcement experience, in which, the past thirteen have been extensively directed in narcotics investigations. The facts and information in this affidavit are based on my personal knowledge and the knowledge of other law enforcement officers.

2. On Saturday, March 15, 2008, Trooper Billy Fulmer was on routine patrol on Interstate 85 at the 17 mile marker. At approximately 3:30p.m., Trooper Fulmer observed a white passenger vehicle traveling south on Interstate 85 that appeared to be exceeding the posted speed limit. Trooper Fulmer activated his radar which indicated that the vehicle was in fact speeding, 78 mph in a 70 mph speed zone. Trooper Fulmer activated his emergency equipment and pulled in behind the vehicle. The vehicle, a white 2008 Saturn Aura then pulled over onto the shoulder of the roadway at the 14 mile marker.

3. Upon approaching the vehicle, Trooper Fulmer asked the driver for his driver license. The driver produced a Georgia driver license identifying him as BRYON CHARLES COLLINS. Trooper Fulmer noticed COLLINS to be extremely nervous, visibly shaking and had a very rapid rate of breath. COLLINS was also chewing gum, and was chewing it very fast. Trooper Fulmer asked COLLINS if his driver license was current, COLLINS replied, "Yes". Trooper Fulmer asked COLLINS if he had ever been arrested before. COLLINS stated, "Yes, I was arrested for a kilogram of cocaine a while back". Trooper Fulmer noticed that COLLINS was showing signs of distress while talking about the prior arrest. Trooper Andy Sutley arrived on the scene of the traffic stop and began talking to COLLINS about the music industry. COLLINS advised that he was traveling to New Orleans to do a show. COLLINS advised that the show started the daybefore (Friday). Trooper Sutley advised COLLINS that the show would be over when he (COLLINS) got there. COLLINS exhaled heavily.

4. Trooper Fulmer then handed COLLINS all of his paperwork and began printing out COLLINS warning citation. Trooper Fulmer asked COLLINS if there was anything illegal in the car. COLLINS stated, "No". Trooper

Fulmer specifically asked if there was any marijuana in the car. COLLINS stated, "No". Trooper Fulmer asked COLLINS if there was any cocaine in the car. COLLINS stated, "No". Trooper Fulmer asked COLLINS if there were any weapons or U.S. currency in the car. COLLINS stated, "No". Trooper Fulmer handed COLLINS his copy of the warning citation. Trooper Fulmer asked COLLINS if he (Trooper Fulmer) could search the vehicle. COLLINS stated, Yes, you can search it." Trooper Fulmer then allowed COLLINS to read the consent to search form. COLLINS read and signed the form.

5. At COLLINS signed the form, Troopers Fulmer and Sutley began searching the vehicle for contraband. Trooper Fulmer began searching on the driver's side of the vehicle in the area of the front seat. Trooper Fulmer observed a piece of plastic paneling running beside the center console. Trooper Fulmer noticed that the piece of paneling was not attached well. Trooper Fulmer found this to be unusual since the vehicle was new. Trooper Fulmer pulled the piece of paneling back and observed a black package under the console. COLLINS was then placed under arrest and was advised of his rights under Miranda by Trooper Sutley. Trooper Sutley then retrieved the package from under the center console area. The package was wrapped in black tape. Under the tape was cellophane and four (4) clear plastic sandwich bags (tied) all containing an off white/tan powdery substance. Trooper Fulmer asked COLLINS what was the content of the package. COLLINS stated, "I don't know what you are talking about". Trooper Corporal Charles Anderson arrived at the scene and conducted a field test on a portion of the substance at approximately 4:07 p.m. The field test produced a "positive" reaction for the presence of heroin. COLLINS was advised that he was under arrest for "Trafficking in Heroin". COLLINS had no reply.

6. I was contacted by the Montgomery State Trooper Post and was advised to contact Trooper Fulmer. I contacted Trooper Fulmer via Southern Linc radio and was advised of the circumstances regarding the traffic stop. I advised Trooper Fulmer to transport COLLINS to the HIDTA Group 40 Office. Upon arrival at the Group 40 Office, the purported heroin was relinquished into my custody by Trooper Fulmer. The substance was weighed and was determined to be 115.15 gross grams.

7. Once at the HIDTA office, I advised COLLINS of his rights. COLLINS advised he understood his rights, but did not want to answer any questions.

8. A check of BRYON CHARLES COLLINS on NCIC has revealed:

   a. 1993- Arrested for Possession with Intent to Distribute Cocaine (New Orleans, Louisiana) – Disposition: Convicted and sentenced to 63 months confinement to the custody of the United States Bureau of Prisons. Upon release, five (5) years supervised release.

Based upon the statement of facts and circumstances set forth herein, I have probable cause to believe that on March 15, 2008, in the Middle District of Alabama, BRYON CHARLES COLLINS, committed a violation of Title 21, United States Code, Section 841(a)(1): that is, Possession with Intent to Distribute Heroin, a Schedule I Controlled Substance.

_____
Robert Thornton, Affiant
Group 40 Task Force Officer

Sworn to and subscribed before me this 17th day of March 2008.

_____
Hon. Wallace Capel, Jr.
United States Magistrate Judge